UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKAL SECURITY, INC,<br><br>                    Plaintiff,<br><br>vs.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>                    Defendant. | CASE NO. 09-CV-2277 W NLS<br><br>ORDER (1) GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND (2) DENYING DEFENDANT'S MOTION TO DISMISS |

Pending before the Court is Defendant U.S. Immigration and Custom Enforcement's ("ICE") motion to dismiss or, in the alternative, motion for summary judgment. Plaintiff Akal Security, Inc. ("Akal") opposes the motion.

The Court decides the matters on the papers submitted and without oral argument. See S.D. Cal Civ. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** ICE's summary-judgment motion and **DENIES** ICE's motion to dismiss as moot. (Doc. 4.)

//

//

## I. BACKGROUND

ICE owns and operates the Department of Homeland Security ("DHS") ICE Processing Center located in El Centro, California (the "Facility"). (*Oppo.* [Doc. 6], at 5.) The Facility is one of eight prison-like immigration detention centers located throughout the United States that detains illegal aliens with criminal records prior to deportation. (*Id.*) Between January 1, 2003 and June 31 2009, Akal entered into a contract with ICE to employ security officers to staff the Facility (the "Contract"). (*Id.*)

On April 27, 2006, Akal was sued in California Superior Court in the matter entitled <u>David Loera v. Akal Security, Inc.</u>, Imperial County Superior Court, Case No. ECU 03022. (*Oppo.* at 5.) The plaintiffs in the pending state-court action are former Akal security officers who worked at the Facility and are pursuing a class action based on the application of California wage and hour law to plaintiffs' meal periods, rest breaks, and overtime. (*Req.* [Doc. 1], at ¶4.) Plaintiffs seek unpaid wages and statutory penalties in excess of $50,000,000. (*Oppo.* at 3.) Akal's defense to the claim is based on the exclusive application of federal law. (*Req.* at ¶5.) Specifically, Akal claims that because it was performing a federal function under the Contract, the application of California law constitutes an impermissible regulation of that federal function. (*Id.*) In the alternative, Akal claims its violations of California law were not wilful because it believed California law did not apply to the Facility based on statements made by ICE employees. (*Oppo.* at 3.)

To substantiate these defenses, Akal sought to obtain testimony from ICE personnel through informal discovery. (*Req.* at ¶ 15.) When ICE declined to cooperate, Akal issued state-court deposition subpoenas to six current and former ICE employees. (*Id.* at ¶ 16; *Mot.* at 2.) DHS, through its attorneys in the Office of Chief Counsel and the Office of Principal Legal Advisor, denied Akal's requests for testimony. (*Mot.* at 2.)

On October 14, 2009, Akal filed this Request for Administrative Relief, pursuant to 5 U.S.C. §§ 702-706 of the Administrative Procedures Act ("APA"), to compel compliance with five of the six subpoenas. Akal is requesting the Court compel ICE to

produce the following five individuals to appear and provide deposition testimony: (1) Alan J. Barclay; (2) James Hayley; (3) Linda Holder; (4) Luis Allen; and (5)Robin F. Baker. (*Id.* at 4.)

The five witnesses were ICE employees during the Contract. (*Req.* at 13.) Additionally, each individual was directly involved in the operation of the Facility, and either directly or indirectly communicated with Akal personnel regarding the provision of security services under the Contract. (*Id.*) Akal, therefore, seeks the following testimony from the individuals:

> (1) ICE officials, and specifically, Manuel de Leon and James Haley instructed Akal to restrict its security officers from leaving the premises during meal periods;
>
> (2) The effect of enforcing California wage and hour laws at the Facility would require ICE to revise its Security Plan for the Facility, and its requirements of the private Contractor;
>
> (3) ICE officials, specifically Linda Holder, Manual de Leon, and James Haley each believed that the Facility was a Federal Enclave and/or Federal Installation and that California law was generally inapplicable to the Facility, and communicated the same to Akal personnel.

(*Oppo.* at 3.) Akal also requests that ICE be estopped from denying deposition subpoenas served on any other individuals who worked with Akal at the Facility and are relevant to the resolution of the pending state-court matter. (*Req.* at 4.)

On December 11, 2009, ICE filed this motion to dismiss or, in the alternative, for summary judgment. Akal opposes. Because the Court finds summary judgment is appropriate, the Court need not address the motion to dismiss.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it

1 could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving

party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### III.   DISCUSSION

In the instant action, Akal seeks judicial review under the APA of DHS's decision to deny its subpoenas. To prevail under the APA, Akal must prove DHS's decision was "arbitrary and capricious." 5 U.S.C. § 706(2)(A). ICE argues that Akal cannot make this showing because DHS's decision was reasonable and rational. (*Mot.* at 1.) As such, ICE argues DHS's decision should be affirmed and judgment entered in its favor. (*Id.*)

In opposition, Akal argues ICE has not met its burden to prevail on summary judgment. (*Oppo.* at 15.) Specifically, Akal argues disputed issues of material fact exist as to whether DHS: (1) examined the relevant data; (2) considered all relevant factors; and (3) stated a reason for denying the requests that is rationally connected to the facts found. (*Id.* at 16.) Accordingly, Akal argues ICE's summary-judgment motion should be denied. (*Id.*) The Court disagrees with Akal and finds DHS's decision was neither arbitrary nor capricious.

The head of an executive department may prescribe regulations governing "the custody, use, and preservation of its records, papers, and property." 5 U.S.C.A. § 301. These regulations are referred to as *Touhy* regulations. See U.S. ex rel. Touhy v. Ragen,

340 U.S. 462 (1951). *Touhy* regulations have the force of law. <u>Swett v. Schenk</u>, 792 F.2d 1447, 1451 (9th Cir. 1986).

DHS has promulgated *Touhy* regulations for evaluating requests for testimony from current and former DHS employees. 6 C.F.R. §§ 5.41-49 (2009). Under the *Touhy* regulations, "in deciding whether to comply with a demand or request, Department officials and attorneys shall consider, among any other pertinent considerations:

> (1) Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose;
>
> (2) Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;
>
> (3) The public interest;
>
> (4) The need to conserve the time of Department employees for the conduct of official business;
>
> (5) The need to avoid spending the time and money of the United States for private purposes;
>
> (6) The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated;
>
> (7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties; and
>
> (8) The need to avoid involving the Department in controversial issues not related to its mission."

6 C.F.R. § 5.48(a)(1-8) (2009).

An APA action is the appropriate means for reviewing a federal agency's final decision based on *Touhy* regulations. <u>See</u> <u>In re Elko County Grand Jury</u>, 109 F.3d 554, 556 (9th Cir. 1997). Under the APA, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be. . . arbitrary, capricious, an

1  abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);
2  Mt. St. Helens Mining and Recovery Ltd. Partnership v. U.S., 384 F.3d 721, 727 (9th
3  Cir. 2004) ("It is well established that once an agency has taken final agency action
4  under the APA, a reviewing court analyzes that decision under the 'arbitrary and
5  capricious' standard of review.").  Thus, DHS's decision to prohibit its current and
6  former employees from testifying pursuant to a state-court subpoena is exactly the kind
7  of final agency action subject to review under the APA's arbitrary and capricious
8  standard.  See In re Elko County Grand Jury, 109 F.3d at 556-57.

9  In applying the arbitrary and capricious standard, the reviewing court must
10 determine whether the agency's decision was based on a consideration of the relevant
11 factors and whether there has been a clear error of judgment. Mt. St. Helens, 348 F.3d
12 at 728.  The agency's decision must be upheld if the agency articulated a rational
13 connection between the facts and the choice made. Id.  This standard of review is
14 narrow and the court may not substitute its own judgment for that of the agency. Id.
15 Additional deference is given to an agency's decision when that agency is not a party to
16 the dispute.  COMSAT Corp. v. National Science Foundation, 190 F.3d 269, 278 (4th
17 Cir. 1999)("When an agency is not a party to an action, its choice of whether or not to
18 comply with a third-party subpoena is essentially a policy decision about the best use of
19 the agency's resources.").

20 Here, ICE argues summary judgment should be entered in its favor because its
21 decision was not arbitrary or capricious.  ICE has provided declarations from three ICE
22 attorneys who, in consultation with the U.S. Attorney's Office, made recommendations
23 to DHS based on the considerations set forth in DHS's *Touhy* regulations (4),(5) and(7)
24 in 6. C.F.R. § 5.48(a). (*Mot.* at 7.)

25 With respect to the current ICE employees Alan J. Barclay, James Haley, and
26 Robin F. Baker, ICE argues that DHS properly concluded producing these employees
27 for depositions would have an adverse effect on the Department's performance of its
28 mission and duties. (*Mot.* at 8.)  Barclay is employed as a Contract Specialist at the

1  Office of Acquisition in Laguna Niguel, California. (*Anderson Decl.* at ¶4.)  Barclay is
2  responsible for management of three contracts, the negotiation and interpretation of
3  contract terms, and the oversight of purchase and interagency orders. (*Id.*)  Haley is
4  employed as a Detention Operations Supervisor at the ICE Processing Center in El
5  Centro, California. (*Halliday-Roberts Decl.* at ¶4.) Haley's duties include supervising the
6  early stages of implementation of a new security contract.  (*Id.*)  Baker is employed as
7  the Field Office Director of the Deportation and Removal Operations for the entire San
8  Diego Area of Responsibility.  (*Soblick Decl.* at ¶4.)  Baker oversees the operation of
9  several detention facilities and manages some 450 individuals.  (*Id.*)  In light of these
10 employees' positions and heavy workloads, DHS concluded taking them away from their
11 duties would be "unduly burdensome."  (*Anderson Decl.* at ¶4; *Halliday-Roberts Decl.* at
12 ¶4; *Soblick Decl.* at ¶4.)  ICE also argues that DHS was justified in refusing Akal's
13 requests in order to ensure these employees' time was spent on official business and not
14 on private matters. (*Id.*)

15       Additionally, ICE contends DHS considered the subject matter of the testimony
16 sought and concluded that none of the information sought was held exclusively by
17 Barclay, Haley, or Baker. (*Anderson Decl.* at at ¶5; *Halliday-Roberts Decl.* at ¶5; *Soblick
18 Decl.* at ¶5.)  Rather, DHS concluded Akal's contracting agents and on-site supervisors
19 possessed the same information and would be equally capable of testifying in the
20 pending state-court action to conversations they had with the ICE employees. (*Id.*)  As
21 such, DHS decided Barclay, Haley, and Baker's testimony would be repetitive and,
22 therefore, a waste of federal money and time.  (*Id.*)

23       ICE argues the aforementioned considerations also apply to the former ICE
24 employees Linda Holder and Lewis Allen. (*Mot.* at 7-8.)  Because Holder and Allen are
25 retired and no longer in contact with ICE, DHS determined it would have to expend
26 resources locating the former employees to advise them of the appropriate parameters
27 of their testimony, and familiarize them with the terms of the Contract, which they had
28 not worked under for more than three years. (*Anderson Decl.* at ¶9.)  Accordingly, DHS

1   declined to produce Holder and Allen based on the need to conserve the time of its
2   current employees for official business, the adverse effect on the performance of the
3   Department's mission and duties, and the need to avoid spending the time and money
4   of the United States for private purposes. (*Id.*)

5       Lastly, ICE contends that DHS considered all requests in light of policy concerns.
6   (*Mot.* at 5.) Based on the "common knowledge that the San Diego area sees a lion's
7   share of contracts between the federal government and contractors employing hourly
8   workers," DHS concluded federal agencies would be inundated with deposition
9   subpoenas if a precedent of granting such requests was established. (*Halliday-Roberts*
10  *Decl.* at ¶10.) The Ninth Circuit has acknowledged "the government's serious and
11  legitimate concern that its employee resources not be commandeered into service by
12  private litigants to the detriment of the smooth functioning of government operations."
13  Exxon Shipping Co. v. U.S. Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994).
14  Therefore, DHS's policy concerns constitute a legitimate basis for denying Akal's
15  subpoena requests.

16      Akal does not dispute any of the facts ICE cites as the basis for DHS's decision
17  to deny the subpoena requests. Rather, Akal claims DHS failed to consider other
18  relevant data and factors and to state a reason for denying the requests that is rationally
19  connected to the facts. (*Oppo.* at 16.) Specifically, Akal alleges that DHS also should
20  have considered *Touhy* factors (1) and (3) in 6 C.F.R. § 5.48(a). (*Id.* at 20-21.) But
21  Akal provides no authority for the proposition that DHS's decision must be supported
22  by every potentially relevant *Touhy* factor to survive scrutiny under the APA.
23  Moreover, at least one other court has upheld a decision by DHS to deny subpoena
24  requests based on the exact same *Touhy* factors relied on by DHS in the instant case.
25  See Debry v. Department of Homeland Security, 688 F.Supp.2d 1103, 1110 (S.D.Cal.
26  2009) (holding the DHS's decision was not in clear error because DHS based its
27  decision on *Touhy* factors (4), (5), and (7) in 6 C.F.R. § 5.48(a)). As such, the Court
28

cannot conclude that DHS's decision was arbitrary and capricious simply because DHS did not rely on other *Touhy* factors to support its decision.

The standard of review under the APA is narrow, and this Court cannot substitute its own judgment for that of DHS absent evidence the decision was arbitrary and capricious, and in clear error. Akal has failed to produce any such evidence in its opposition, instead relying on unsupported allegations that DHS's denial was arbitrary and capricious. Accordingly, the Court will grant ICE's summary-judgment motion.

### IV. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** ICE' summary-judgment motion, and **DENIES** as moot the motion to dismiss. (Doc. 4.)

**IT IS SO ORDERED.**

DATED: July 9, 2010

_____
Hon. Thomas J. Whelan
United States District Judge